IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL RAILROAD PASSENGER | ) | |
| CORPORATION and CHICAGO UNION | ) | |
| STATION COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No: |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME Plaintiffs NATIONAL RAILROAD PASSENGER CORPORATION ("Amtrak") and CHICAGO UNION STATION COMPANY ("CUSCO") by their attorneys, Susan K. Laing and Anderson, Rasor & Partners, LLP and for their Complaint against the CITY OF CHICAGO states as follows:

### Jurisdiction and Parties

1.     Jurisdiction of this Court is invoked under the provisions of Title 28 U.S.C. §§ 1331 and 1349 as the National Railroad Passenger Corporation ("Amtrak") was created by an Act of Congress,  (45 U.S.C. § 501 *et seq.*), and was incorporated pursuant to 45 U.S.C. §§ 541 and 542, now codified under 49 U.S.C. §§ 24301, *et seq.*.  The United States is the owner of more than one-half of Amtrak's capital stock.

2.     Venue is proper in the Northern District of Illinois under 28 U.S.C. §1391(b) as the acts giving rise to this claim occurred in Chicago, Illinois.

3.     CUSCO is an Illinois corporation with its principal place of business in Chicago, Illinois.  CUSCO holds legal title to Chicago Union Station ("Station"), and is a wholly-owned

subsidiary of Amtrak. *See* National Railroad Passenger Corporation Annual Report for Fiscal Year 2013, www.amtrak.com/ccurl/1000/237/Amtrak-Annual-Report-2013.pdf at 57, n.4 (of the pdf copy).

4. Amtrak is a District of Columbia corporation with its principal place of business in the District of Columbia. 49 U.S.C. §24301(b). Amtrak is the owner of CUSCO. *See* National Railroad Passenger Corporation Annual Report for Fiscal Year 2013, www.amtrak.com/ccurl/1000/237/Amtrak-Annual-Report-2013.pdf at 57, n.4 (of the pdf copy).

5. The City of Chicago ("City") is a municipal corporation organized under the laws of the State of Illinois.

### Allegations Common To All Counts

6. On March 23, 1914, the City of Chicago passed an Ordinance by which the City granted to CUSCO and its successors the right to construct, maintain, use and operate a railroad passenger station located on the west side of the Chicago River, subject to CUSCO's acceptance of certain terms and conditions ("Ordinance").

7. On September 23, 1914, CUSCO accepted the Ordinance and its terms.

8. As a part of the Ordinance agreement, CUSCO agreed to reconstruct and regrade South Canal Street between West Madison Street and West Twelfth Street, in order to allow for the construction of the railroad tracks and passage of railroad traffic beneath the streets.

9. Following the acceptance of the Ordinance, CUSCO regraded South Canal Street thereby creating a viaduct over the railroad tracks of the Station between Madison Street and Taylor Street (the "Canal Street Viaduct" or "Viaduct").

10.     On or about September 13, 1978, the City and CUSCO entered into an Agreement addressing the rehabilitation of the Canal Street Viaduct ("Rehabilitation Agreement"). *See* Journal of Proceedings of the City Council of the City of Chicago, September 13, 1978, pp. 8222-8223 attached hereto as Exhibit "A".

11.     Section 1 of the 1978 Agreement provided the following:

Section 1. The City agrees to perform the following work under this agreement, namely: Repair the deteriorated areas of sidewalk and roadways, renew or replace expansion joints, replace stairways at both Cabrini and Arthington Streets. Improve gutter grades for drainage. Seal the roadway surface with a waterproofing membrane, repair deteriorated steel handrail, patch the spalled areas of concrete on the underside of the deck, repair structural steel as necessary. Clean and pain exposed structural steel. All of the aforesaid work shall be performed in accordance with the terms set forth and as shown on the general plan and specifications.

12.     Thereafter, on or about November 14, 1980, the City and CUSCO entered into a Supplemental Agreement whereby CUSCO waived any claimed ownership in the Viaduct structure or structures, and quit-claimed to the City any right, title or interest it held in the viaduct and the City, in turn, agreed to maintain the Canal Street Viaduct structure or structures ("Maintenance Agreement"). *See* Journal of the Proceedings of the City Council of the City of Chicago, November 14, 1980, p. 4312 attached hereto as Exhibit "B".

13.     The Maintenance Agreement is in full force and effect.

14.     Under the terms of the Maintenance Agreement, it was and continues to be the City's obligation to maintain the Canal Street Viaduct, including the roadway surfaces, expansion joints, structural steel and undersurfaces of the Viaduct in a safe condition, consistent with its uses which included Amtrak and CUSCO's use of the station platforms and track under the Viaduct as a passenger railroad station.

15.     As an additional part of the Maintenance Agreement, CUSCO granted to the City the right to enter the station, station track and platform areas beneath the Viaduct at those times deemed safe and reasonable times given the station so that the City could maintain the Viaduct.

16.     CUSCO and/or Amtrak have performed all material conditions required of them by the Maintenance Agreement.

17.     The City has failed to properly maintain the Canal Street Viaduct, leading to spalling concrete on its undersurfaces.

18.     As a direct result of the City's ongoing failure to properly maintain the Canal Street Viaduct as required by the Maintenance Agreement, for the time period beginning in June, 2013, and continuing to the present, Amtrak and CUSCO have been required to continuously inspect and monitor the undersurface condition, remove portions of spalled concrete, and erect additional structures under the Viaduct in order to prevent the undersurface material of that portion of Canal Street Viaduct that extends over the Station, station tracks and passenger platforms from endangering persons and equipment in those areas.

### Count I - Breach of Contract and Specific Performance

19.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 18 of the Allegations Common To All Counts as and for paragraph 19 of Count I as though set forth fully herein.

20.     By failing to properly maintain the Canal Street Viaduct, the City has breached its contract with CUSCO.

21.     As a result of the City's ongoing breach of the Maintenance Agreement, CUSCO and Amtrak have been damaged in an amount to be determined at trial, but believed to be no less

than $514,000.00, which sum includes but is not limited to the cost of inspection, concrete removal and preventative measures since June, 2013, to the present, as well as with other and further damages as CUSCO and Amtrak may be entitled to under the law.

WHEREFORE, Plaintiffs NATIONAL RAILROAD PASSENGER CORPORATION and CHICAGO UNION STATION COMPANY demand the entry of an Order:

a.   Entering judgment in favor of the Plaintiffs against the Defendant CITY OF CHICAGO on Count I;

b.   Awarding the Plaintiffs an amount to be determined at trial, in excess of $514,000.00 plus interest and costs to the extent permitted by law;

c.   Compelling specific performance of the Maintenance Agreement and repair and remediation of those portions of the Canal Street Viaduct located over the Station, station tracks and platforms, or alternatively the installation of additional structures underneath the Canal Street Viaduct sufficient to protect the persons and equipment using that area;

d.   Awarding any and all other relief as justice requires.

## Count II - Negligence

22.   Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 18 of the Allegations Common To All Counts as and for paragraph 22 of Count II as though set forth

23.   As the owner of the Canal Street Viaduct, it was and continues to be the City's duty to maintain the Canal Street Viaduct, including the roadway surfaces, expansion joints, structural steel and undersurfaces of the Viaduct in a reasonable and safe manner, and in a safe condition, consistent with its uses which included Amtrak and CUSCO's use of the station,

station platforms and track under the Viaduct as a passenger railroad station.

24.     The City has failed to properly inspect and maintain the Canal Street Viaduct when it knew or should have known that its failures would jeopardize the persons and equipment located underneath the Viaduct.

25.     As a direct result of the City's ongoing failure to properly inspect and maintain its public way, the Canal Street Viaduct, Amtrak and CUSCO have been forced to and continue to expend their own funds in order to inspect, eliminate and protect against any hazardous conditions on the undersurface of the Canal Street Viaduct that extend over the Station, station tracks and passenger platforms, so as to protect persons and equipment in those areas.

WHEREFORE, Plaintiffs NATIONAL RAILROAD PASSENGER CORPORATION and CHICAGO UNION STATION COMPANY demand judgment against the Defendant CITY OF CHICAGO for any and all sums that they have expended and will expend in the inspection, maintenance and repair of the Canal Street Viaduct undersurfaces, as well as for such other relief as justice requires.

### Count III - Nuisance

26.     Plaintiffs hereby adopt and incorporate by reference paragraphs 1 through 18 of the Allegations Common To All Counts as and for paragraph 26 of Count III as though set forth fully herein.

27.     Under the terms of the Maintenance Agreement as well as pursuant to its obligations as the owner of the Viaduct, it was and continues to be the City's obligation to maintain the Canal Street Viaduct, including the roadway surfaces, expansion joints, structural steel and undersurfaces of the Viaduct in a safe condition, consistent with its uses which included

Amtrak and CUSCO's use of the station, station platforms and track under the Viaduct as a passenger railroad station.

28.    As the owner of the Canal Street Viaduct, the City had and continues to have the duty to maintain the Canal Street Viaduct, including the roadway surfaces, expansion joints, structural steel and undersurfaces, in a reasonable and safe manner, consistent with its uses which included Amtrak and CUSCO's use of the station, station platforms and track located under the Viaduct as a passenger railroad station.

29.    The City has failed to properly inspect and maintain the Canal Street Viaduct and its ongoing failures constitute a significant interference with the public peace, comfort and convenience, and if left unresolved, have the potential to put at risk the safety and health of the workers and the general public using the station areas underneath the Viaduct.

30.    As a direct and proximate result of the City's ongoing failures, CUSCO and Amtrak have been damaged in an amount to be determined at trial, but no less than $514,000.00 exclusive of attorney's fees and costs.

WHEREFORE, Plaintiffs NATIONAL RAILROAD PASSENGER CORPORATION and CHICAGO UNION STATION COMPANY demand judgment against the Defendant CITY OF CHICAGO for any and all sums that they have expended and will expend in the inspection, maintenance and repair of the Canal Street Viaduct undersurfaces, as well as for such other relief as justice requires.

<div style="margin-left:40%">

NATIONAL RAILROAD PASSENGER
CORPORATION and CHICAGO UNION
STATION COMPANY

By:   /s/  Susan K. Laing
          One of their attorneys

</div>

Susan K. Laing
Anderson, Rasor & Partners, LLP
100 South Wacker Street, Suite 1000
Chicago, Illinois 60606
(312) 673-7800
susan.laing@arandpartners.com